UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY, )<br>        Plaintiff,                             )<br>                                              )<br>v.                                            )<br>                                              )<br>WAYNE EVERLING, NIKI EVERLING, and )<br>JAROD REBUCK,                            )<br>        Defendants.                     ) | CASE NO.: 1:20-cv-394-RLY-MPB |

**DEFENDANT, JAROD REBUCK'S, RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Jarod Rebuck, by counsel, responds to and opposes Plaintiff, Motorists Mutual Insurance Company's, Motion for Summary Judgment, and states as follows:

**FACTS**

Motorist Mutual Insurance Company, (hereinafter referred to as "Motorist") sold a Business Automobile Policy to Hittle Landscaping Inc., (hereinafter referred to as "Hittle") upon renewal in July 2016. (Wallace Dep. 7:6). The specific Hittle vehicles that were insured under the policy were individually listed on the renewal sheet provided to Motorist by Hittle. (Wallace Dep. 7:1-3) (Plaintiff Response to RFP, Exhibit pgs. 0001 - 0004). The vehicle at issue is a white 1996 Chevrolet truck, also referred to as 1996 TK 56 truck, was individually listed on the renewal sheet. (Everling Dep. 5:3-7) (Plaintiff Response to RFP, Exhibit pg. 0004). At no time prior to the February 8, 2017, accident, did Hittle ever request that Motorist remove the 1996 TK56 truck from the list of insured vehicles, nor was it ever removed. (Wallace Dep. 7:15-21).

After his own vehicle stopped working in late January or early February 2017, Hittle employee, Wayne Everling, (hereinafter referred to as "Everling"), asked his boss, Jeff Jaenichen,

if he could borrow one of the Hittle vehicles. Jaenichen told Everling that he could use Hittle Truck 56. (Everling Dep. 5:9-10, 6:6-9).

Everling had driven TK56 numerous times as part of his work for Hittle. (Everling Dep. 5:11-13). A few days into the loan, Jaenichen asked Everling if he was interested in purchasing Hittle's truck. (Everling Dep. 6:21-25). Everling told Jaenichen he "…would have to talk with my wife and find out how much it would be and, you know, all that stuff." (Everling Dep. 7:1-4).

Hittle continued to allow Everling to drive TK56, which he did primarily to and from work. (Everling Dep. 6:6-9).

Hittle, through Jaenichen, indicated it wanted $1,000 for the vehicle, but a price of $900 was agreed to. (Everling Dep. 7:5-6).

According to Everling, the parties did not agree as to how and when the amount was to be paid. (Everling Dep. 7:10-12).

Everling denies ever receiving any type of written confirmation before the accident that monthly payments would be deducted his paycheck until the amount was paid in full. (Everling Dep. 7:7-9, 20-24).

At all times before the accident, Hittle kept the title for the vehicle. (Wallace Dep. 12: 12-14; Everling Dep. 8:16-17). In addition, Hittle continued to provide the license plates for TK56. (Wallace Dep. 12:9-11; Everling Dep. 7:13-17). As Everling testified: "Well, we just came to an agreement that I wanted to purchase it right before the wreck. So they didn't have time to really print nothing up. And nobody discussed anything about insurance, plates, transfer, possession, nothing." (Everling Dep. 7:20-24).

In Everling's mind, they did not have a final agreement to purchase the truck before the accident. He testified: "Q. In your mind, were you the owner of the truck at the time of the

accident? A. No. I was just borrowing it until we came to an agreement, and I signed something." (Everling Dep. 9:20-23).

The police report for the accident indicated the registered owner of the truck involved was Hittle Landscaping and insured by Hittle's agency, Huntington Insurance. (Wallace Dep. 14:11-12).

According to the Hittle Controller, Marla Wallace, Everling was supposed to meet with her and get a copy of a loan payment schedule on February 7, 2017, but no meeting took place. (Wallace Dep. 10:15-11:8).

Everling never paid any type of deposit to Hittle. (Everling Dep. 8:24-9:1). No money changed hands before the accident. (Everling Dep. 9:2-4). Everling never received the title or salvage value for the vehicle. (Everling Dep. 8:16-17; 9:5-7).

After the accident, Motorist instructed Hittle to retain the vehicle at Hittle's facility, which it did. (Wallace Dep. 13:8-14).

## Questions Of Material Fact Preventing Plaintiff's Summary Judgment

1. **Did Hittle have an insurable interest in the 1996 Chevrolet Truck Everling was driving at the time of the accident between Everling and Rebuck?**
2. **Was Everling a permissive user of the vehicle at the time of the accident between Everling and Rebuck?**

## SUMMARY JUDGMENT STANDARD

In diversity actions, such as this, the Court applies Indiana substantive law in determining the appropriateness of a summary judgment motion. *Erie R.R. v. Tompkins,* 304 U.S. 64.

The Court must draw reasonable inferences from undisputed facts in favor of the nonmoving party and view the disputed evidence in the light most favorable to the non-moving party. *First Bank & Trust v Firstar Info. Services, Corp.,* 276 F. 3d 317, 322, (7th Cir. 2001)

In coverage determinations, ambiguities are to be construed in favor of the insured. *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 865 N.E.2d 571, (Ind. 2007).

## ARGUMENT

### 1. It is a Question of Fact Whether Hittle Retained an Insurable Interest in the Truck at the Time of the Accident.

Indiana law is crystal clear that ownership of the car at the time of the February 7, 2017, accident is a question of fact for the jury. The Indiana Court of Appeals decided this issue in *Auto-Owners Ins. Co. v. Bill Gaddis Chrysler Dodge, Inc.,* 973 N.E. 2d 1179 (Ind. App. 2012) trans. denied, as follows:

**Ownership of the Car**

Auto-Owners maintains that the undisputed designated evidence proves that Garrett owned the car, not the dealership. Accordingly, Auto-Owners contends that the car was not covered by the dealership's garage liability policy at the time of the accident with Foster. In support of that contention, Auto-Owners directs us to various portions of its designated evidence showing that Garrett owned the car at the time of the accident.
*But Auto-Owners' designated evidence also supports a reasonable inference that the dealership owned the car at the time of the accident. In particular, the designated evidence shows that: the dealership did not transfer title to the car to Garrett prior to the accident; Garrett "actually never paid for the car," but it had been "charged" to Scott's account with the dealership; Garrett had previously driven a car owned by the dealership when he worked for Papa John's delivering pizzas; and Garrett had neither registered the car nor purchased insurance at the time of the accident. Appellant's App. at 999. Moreover, the undisputed designated evidence shows that, after the accident, the dealership sold the car at auction, the proceeds from that sale were used to credit Scott's account with the dealership for the cost of the car, and the excess proceeds from that sale were not paid to Garrett.*

4

> ***We hold that the designated evidence creates a genuine issue of material fact regarding ownership of the car. The fact that the dealership sold the car without paying Garrett the excess proceeds from the sale, without more, supports a reasonable inference that the dealership owned the car at the time of the accident.*** While a trier of fact may ultimately conclude otherwise, this question of fact precludes summary judgment.
>
> *Auto-Owners Ins. Co. v. Bill Gaddis Chrysler Dodge, Inc.,* 973 N.E 2d at 1184 (emphasis added).

If these facts look familiar, its because they mirror the ones involving this case. No title was transferred. Everling never actually paid for the car. Everling had previously used the vehicle. Everling had neither registered the car nor purchased insurance. Everling never received any proceeds from the sale of the vehicle. In addition, the plates on the truck at the time of the accident belonged to Hittle.

It is hornbook law that a contract requires a "meeting of the minds" in order to be valid. As the Indiana Supreme Court stated: "Under a contract theory, the agent and the insured may come to a "meeting of the minds" on a particular policy and mutually assent to the agent procuring that policy on behalf of the insured—the contract "is not binding if negotiations are incomplete in any material particular [element], or assent of either party is lacking." *Stockberger,* 182 Ind. App. at 577, 395 N.E.2d at 1279; *Ind. Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.,* 27 N.E.3d 260, 268 (Ind. 2015).

Again, Everling testified he thought he was just borrowing Hittle's truck at the time of the accident. (Everling Dep. 9:22-23.)

Applying Indiana substantive law, the ownership of the vehicle, and therefore whether Hittle retained an insurable interest under the Motorist Policy, is a question of fact.

### 2. It Is A Question Of Fact If Everling Was A Permissive User Under The Motorist Policy At The Time Of The Accident.

It is undisputed Everling had Hittle's permission to use the vehicle. As addressed above, Motorist does contest whether Hittle owned the vehicle at the time of the accident. The Motorist Policy provides the following in its definition of "insured" for the liability:

WHO IS AN INSURED

The following are "insureds":

  a. You [Hittle, the named insured] for any covered "auto."

  b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except: (1) The owner or anyone else from whom you hire or borrow a covered "auto." (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

Again, applying Indiana law, *Auto-Owners Ins. Co. v. Bill Gaddis Chrysler Dodge, Inc.,* 973 N.E.2d 1179 (Ind.App.2012) provides the answer as follows:

> Auto-Owners also maintains that Garrett is not an insured under the terms of the dealership's garage liability policy. The relevant provision in that policy states as follows:
>
> SECTION III-WHO IS AN INSURED
>   B. With respect to any auto or farm implement as described under SECTION II — COVERAGE, COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. COVERAGE, B. Bodily Injury And Property Damage Liability (Auto) only:
> 1. You.
> 2. Your garage customers.

6

> 3. <u>Any other person</u> or organization using an auto or farm implement <u>with your permission</u>. . .
>
> Appellant's App. at 300-01 (emphases added). The parties agree that Garrett was not a "garage customer." The only dispute is whether Garrett was "any other person" using an auto "with [the dealership's] permission." <u>See id</u>. In other words, the question presented is whether Garrett was a permissive user under the garage liability policy. See *State Farm Mutual Automobile Ins. Co. v. Gonterman,* 637 **N.E**.2d 811, 814 (Ind. Ct. App. 1994).
>
> In support of its contention that Garrett was using the car without the dealership's permission at the time of the accident, Auto-Owners relies on designated evidence showing that Scott had taken the car keys away from Garrett and prohibited him from using the car on the date of the accident. Indeed, Garrett testified to that effect and admitted having stolen the keys from his father to gain access to the car. But that evidence, which indicates that Garrett did not have <u>Scott's</u> permission to drive the car, has no bearing on the question of whether <u>the dealership</u> had given Garrett permission to drive the car.
>
> Indeed, in its memorandum in support of summary judgment, Auto-Owners argued that the dealership "placed no restrictions on the use of [the car] after it had been sold to Garrett Gaddis." <u>Id</u>. at 347. Auto-Owners argued further, "[a]ny restrictions placed on the use of the [car] were decided by Garrett Gaddis or Garrett's father, Scott Gaddis." <u>Id</u>. at 347-48. Without evidence that Scott was acting on behalf of the dealership when he took the car keys away from Garrett, we cannot say that the issue of permission has been resolved as a matter of law. We hold that there is a genuine issue of material fact regarding whether Garrett operated the car with the dealership's permission at the time of the accident and whether Garrett was, then, an insured under the garage liability policy.
>
> *Auto-Owners Ins. Co. v. Bill Gaddis Chrysler Dodge, Inc.,* 973 N.E at 1184.

Putting matters in their proper procedural posture, these issues of fact must be construed in favor of coverage. That is, that Hittle retained ownership at the time of the accident and that Everling was a permissive user under the Motorist policy.

The authority cited by Motorist is easily distinguishable from both *Auto Owners* and the case at bar. That is, the two factual main issues, ownership and permissive use were not at issue in *Progressive v Consolidated,* 673 N.E. 2d 522,526 (Ind. App. 1996) as evidenced by footnote 1& 2:

7

> fn1. We note that the record indicates a factual dispute concerning ownership of the Dodge. ***While such an issue could preclude a summary judgment***, we are limited to addressing only those issues raised by the parties. Because no factual issues are in dispute on appeal, we will resolve the issue presented as a matter of law. *See Ayres*, 493 N.E.2d at 1234.
>
> fn2. We note that Progressive does not develop any argument on the theory that Consolidated was liable because Simpson was a permissive user of the Dodge at the time of the accident. Again, we are limited to addressing only those issues raised by the parties.

Here, we have a serious question of fact regarding ownership of the vehicle at the time of the accident; a question that must be resolved in favor of coverage at this point of the procedure. We also have produced evidence that Everling was a permissive user under Hittles' policy with Motorist. Summary Judgment is simply inappropriate.

## **CONCLUSION**

With no written agreement, no transfer of title, no exchange of funds, no meeting of minds, no insurance cancellation and no salvage award, there is no way Motorist's Motion for Summary Judgment should be granted.

Respectfully submitted,

*/s/ John P. Daly, Jr., Esq.*
John P. Daly, Jr., Esq. #11534-40
***Co-Counsel for Defendant, Jarod Rebuck***

**GOLITKO & DALY, PC**
9450 N. Meridian St., Ste. 250
Indianapolis, IN  46260
317.566.9600 Telephone
317.566.9606 Facsimile
john@golitkodaly.com

## CERTIFICATE OF SERVICE

      I certify that the foregoing pleading has been electronically filed using the United States District Court's CM/ECF system on this 28th day of July 2021.

Ginny L. Peterson, Esq.
**KIGHTLINGER & GRAY, LLP**
211 N. Pennsylvania St.
One Indiana Square, Ste. 300
Indianapolis, IN  46204
gpeterson@k-glaw.com
*Attorney for Plaintiff, Motorists Mutual Insurance Co.*

Richard B. Walker, Esq.
Wesley A. Garrett, Esq.
Lisa DeLey, Esq.
**HOWARD, DELEY, & GARRETT**
403 West 8th Street, Ste. 1
Anderson, IN  46016
rwalker@403lawyers.com
wgarrett@403lawyers.com
Lisa.deley@403lawyers.com
*Co-Counsel for Defendant, Jarod Rebuck*

                                            */S/ John P. Daly, Jr., Esq.*
                                            John P. Daly, Jr., Esq. #11534-49

**GOLITKO & DALY, PC**
9450 N. Meridian St., Ste. 250
Indianapolis, IN  46260
317.566.9600 Telephone
317.566.9606 Facsimile
john@golitkodaly.com
*Co-Counsel for Defendant, Jarod Rebuck*