IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) | CASE NO. 1:20-cv-00394-RLY-MPB |
| v. | ) ) | |
| WAYNE EVERLING, NIKI EVERLING, and JAROD REBUCK | ) ) | |
| Defendants | ) | |

**PLAINTIFF MOTORISTS MUTUAL INSURANCE COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION AND SUMMARY**

In its Motion for Summary Judgment, Plaintiff Motorists Mutual Insurance Company ("Motorists") argues that the insurance policy ("the Policy") which it issued to Hittle Landscaping, Inc. ("Hittle") extends no duty to defend or to indemnify an employee Wayne Everling ("Everling") while Everling was driving a vehicle that Everling owned and was not in the course and scope of his employment with Hittle.  No coverage extends under the Policy because Everling does not qualify as an insured under the Policy. Everling does not qualify as an insured  because he was driving a vehicle at the time of the Accident[1] that he owned, which excepts him from the definition of insured under the Policy.  He also, in the alterative does not qualify as a permissive user under the definition of insured under the Policy because the Vehicle Everling was operating was not owned or controlled by Hittle at the time of the Accident.

Defendant Jarod Rebuck ("Rebuck") in his Response asserts that there is a question of material fact that prevents a grant of summary judgment.  Rebuck states that a jury must

---

[1] The Policy, the Vehicle and the Accident are defined in Motorists' Brief in Support of Motion for Summary Judgment.  (Doc. 42, p. 1, 5)

1

determine whether Hittle has an insurable interest in the Vehicle involved in the Accident and whether Everling qualifies as a permissive user of the Vehicle at the time of the Accident. While Motorists addresses these two undisputed areas below and more thoroughly in its initial Brief, the only question that is at issue in this case is whether Everling owned the Vehicle he operated in the Accident, a question the Court can answer based on the undisputed material and genuine facts in this case. Since Everling qualifies as the owner of the Vehicle under Indiana law, Everling cannot qualify as a permissive user of the vehicle over which Hittle has no control. Indiana law proscribes the characteristics of ownership and, despite the fact that Everling had not yet paid for the vehicle or registered or obtained a title in his name, Everling's possession of the vehicle under the undisputed facts in this matter lead to only one conclusion – that Everling was the owner of the Vehicle at issue he operated in the Accident.

In order to support his arguments that genuine issues of material fact are needed for a jury to determine, Everling relies on only one case as presumed precedent, at best distinguishable or at worst, an incorrectly decided case and the most current deposition testimony of Everling which does not contradict his initial sworn testimony upon which Motorists designated and relies. Rebuck still designates no evidence to support a genuine issue of material fact or any cogent argument to rebut Indiana's law on ownership of the Vehicle.

## II. RESPONSE TO FACTS REFERENCED IN REBUCK'S RESPONSE BRIEF

Motorists incorporates the Statement of Material Facts Not in Dispute in its Brief, its designated evidence referenced therein and the Designation of Evidence filed by Rebuck.[2] In his Response, Rebuck states conclusions and/or interpretations of evidence which are incorrect or incomplete.

---

[2] In the Response, Rebuck references a deposition taken of Everling on June 28, 2021("Everling Deposition II"), a 12-minute deposition in which Everling confirmed that his prior testimony in a deposition taken on August 16, 2018 was and still is accurate. Everling Deposition II, p. 10:11-25; 11:1-8

While the facts presented by Rebuck are not numbered, Motorists repeats the inaccurate or incomplete statements below and in italics afterwards provides additional context and/or correction or supplements of the facts given.

- Rebuck's Statement    "The specific Hittle vehicles that were insured under the Policy were individually listed on the renewal sheet provided to Motorists by Hittle." (Response, p. 1)

- Reply:    *While the statement is undisputed that the Vehicle, a 1996 truck, was listed on the "renewal sheet," the designated evidence (both by Motorists and by Rebuck) reflects that the Policy contained a Schedule of Covered Autos as of the beginning of the renewal period July 6, 2016. After the Schedule of Covered Autos, the following statement is made: "The insurance afforded is only for such coverage and endorsements that are specifically designated for each vehicle." (Exhibit B to Complaint, p. 3, designated by Motorists as Exhibit D) As explained in the Brief, the analysis for the court is to evaluate the Liability Coverage section of the Policy. Liability coverage is extended for Symbol 1 which states "any auto." (Exhibit B to Complaint, p. 1-2, designated by Motorists as Exhibit D) The Schedule of Covered Autos That Are Owned instead reflect symbol 2 which is only applicable to medical payments, uninsured/underinsured motorist's coverage, comprehensive and collision coverage as reflected on the Declarations Page. (Exhibit B to Complaint, p. 1-2, designated by Motorists as Exhibit D)   There is no specific reference for the Vehicle as it relates to Liability Coverage.*

- Rebuck's Statement:    "After his own vehicle stopped working in late January or early February 2017, Hittle employee Wayne Everling (hereinafter referred to as

3

"Everling") asked his boss, Jeff Jaenichen, if he could borrow one of the Hittle vehicles." (Response, p. 2)

- Reply: *The evidence states s that at least two weeks before the Accident, which occurred on February 8, 2017, the discussions for the purchase of the vehicle began. Depo. Of Everling, p.23:1-8,23; 34:6-9,14, p.36:11-12,16, p. 48:13-18).*

- Rebuck's Statement: "According to Everling, the parties did not agree as to how and when the amount was to be paid." (Response, p.2)

- Reply: *This statement is incorrect. First, the cited evidence does not make such a statement even in Everling Deposition II. Instead the undisputed facts are that the parties agreed to a price of $900 (reflected in the prior sentence in the Response) and that such would be done through payroll deduction. Depo. Of Everling, p. 34:6-9, 14*

- Rebuck's Statement: "Everling denies ever receiving any type of written confirmation before the accident that monthly payments would be deducted from his paycheck until the amount was paid in full." (Response, p.2-3)

- Reply: *Everling admitted that he received the written confirmation about the amount the day before the Accident and that would be taken out of payroll deduction and that on the day of the Accident, he intended to obtain a copy. (Depo. of Everling, p.39:16-25, 41:1-11). Therefore the statement in the Response is contrary to designated evidence.*

- Rebuck's Statement: "In Everling's mind, they did not have a final agreement to purchase the truck before the accident." (Response, p. 2-3)

- Reply: *This statement contradicts prior testimony by Everling (Depo of Everling, ___) and the written documentation and no additional inference can be made.*

- Rebuck's Statement: "Everling never received the title or salvage value for the vehicle." (Response, p. 3)

- Reply: *The cite to specific evidence is correct and the factual statement is undisputed. However, Rebuck fails to note within the same page of designated evidence that Hittle likewise did not receive any salvage value for the Vehicle. (Depo. of Marla Wallace, p. 13:21-22.)*

**III.  RESPONSE TO SUMMARY JUDGMENT STANDARD**

Motorists agrees with the case law cited by Rebuck in the Response relating to the summary judgment standard. However, Rebuck references case law regarding an ambiguity and how such is construed under Indiana law. Rebuck however makes no argument regarding any ambiguity in the Policy.

Rebuck makes no statement regarding the evaluation or standard for what is a "genuine" or "material" fact for purposes of summary judgment. The following guidance from the United States Supreme Court is helpful:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
>
> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of

> the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted…while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs...materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.
>
> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–49 (S. Ct. 1986)

### IV. ARGUMENT

**A. The substantive law of Indiana governs the elements necessary to determine the ownership of a vehicle. Here, that law requires a finding based on the undisputed genuine and material facts that Everling owned the Vehicle at the time of the Accident and that he does not qualify as an insured under the Policy.**

Rebuck argues, citing one Indiana Court of Appeals' decision, that ownership of a vehicle is a question for the jury. He argues that there was no meeting of the minds between Everling and Hittle as to the purchase of the Vehicle and that, since Everling thought he was still borrowing the Vehicle and had no title or registration to it, a jury must decide whether he owned the Vehicle at the time of the Accident. Rebuck's argument either misunderstands or ignores Indiana law on the role that possession takes on constituting ownership of a vehicle. Rebuck relies on one case (other than what he considers "hornbook law") for this conclusion and ignores longstanding Indiana precedent and statutes stating otherwise.

Rebuck's reliance on Auto-Owners Insurance Co. v. Bill Gaddis Chrysler Dodge, Inc., 973 N.E.2d 1179 (Ind. Ct. App. 2012), *trans. denied*, is misplaced. While the Gaddis court listed similar facts relating to the lack of a registration (and insurance for whatever reason) and found

6

genuine issues of material fact precluded a court finding of vehicle ownership, the Court identified one fact requiring jury involvement, which is not present in this matter. While Rebuck quotes all of the listed areas that the Gaddis court noticed in its evaluation, Rebuck ignores the stated reason that the Gaddis court made the decision it did, stated succinctly "the fact that the dealership sold the car without paying Garrett the excess proceeds from the sale, without more, supports a reasonable inference that the dealership owned the car at the time of the accident." Here the facts are different. Although Rebuck omitted that fact in his Response, Hittle did not obtain the proceeds of any salvage. (Deposition of Marla Wallace, Ex. C to Rebuck's Designation of Evidence, p. 13: 21-24)

To the extent that the Gaddis court considered any of the other presumably undisputed facts regarding such as the lack of insurance, the lack of registration, or the lack of a title, the Gaddis case may have been incorrectly decided. The Gaddis court made no reference to Indiana law on ownership of vehicles and made only a summary decision relating to the ownership issue. Omitting an evaluation of prevailing law and its own precedent, as described in the Brief on pages 12-15.

Rebuck references the term "insurable interest," without defining what that term means, and misses the application of the term to the Policy and the link between ownership and insurable interest. While Rebuck makes no cogent argument about insurable interest, he seems to infer that if Hittle had any insurable interest in the Vehicle that Everling is not the owner of the Vehicle under Indiana law. Insurable interest for liability purposes (as here as it relates to an individual's liability to a third party) and for first party property coverage are actually two distinct concepts. Neither however has any impact on whether the Policy extends coverage to

7

Everling. The only question before the Court is whether Everling owns the Vehicle and the extent that the Policy language excludes him from being an insured.[3]

Public policy underlying the insurable interest requirement is to prevent insureds from using coverage for illegitimate purposes. Prince v. Royal Indem. Co., 541 F.2d 646, 649 (7th Cir.1976), *cert. denied,* 429 U.S. 1094. When a court evaluates insurable interest in the context of an automobile liability policy coverage, for a third party claim, it is not the same interest in the evaluation of damage due to a first party loss. *See* United Services Automobile Ass'n v. Howe, 208 F.Supp. 683, 685 (D.Minn.1962), 322 F.2d 476, *reh'g denied.*

The Indiana Court of Appeals in Progressive Northern Insurance v. Consolidated Insurance Co., 673 N.E.2d 522 (Ind. Ct. App. 1996) reinforced such a concept in a factually similar matter.

> In the context of liability policies, an insurable interest is more readily explained as follows:
>
> The insurable interest in such cases is to be found in the interest the insured has in the safety of those persons who may maintain, or in the freedom from damage of property which may become the basis of, suits against him in case of injury or destruction. The interest does not depend upon whether the insured has a legal or equitable interest in the property, but upon *whether he may be charged at law or in equity with the liability against which the insurance is taken out. . . .* (emphasis added).
> Since motor vehicle liability insurance ordinarily covers legal liability for injury to person or property of others resulting from ownership, maintenance, or use of a motor vehicle, an insurable interest may exist apart from ownership, or complete ownership, *where the circumstances are such that insured may be legally responsible for damages resulting from its use. . . ,*
>
> As a rule, to establish an insurable interest for liability coverage, only the insured's legal accountability for accident or loss must be shown. *Reeder,* 9 F.3d at 17; *see Ohio Farmers Ins. Co. v.*

---
[3] Other issues have already been decided in this matter such as that Everling and his spouse are ineligible for uninsured motorists or underinsured motorists coverage pursuant to the default judgment entered on April 30, 2021. (Doc. 51)

> *Lantz,* 246 F.2d 182, 185 (7th Cir.1957), *cert. denied,* 355 U.S. 883, 78 S.Ct. 151, 2 L.Ed.2d 113, *reh'g denied.* Therefore, liability insurance must only be issued in instances where the insured could be held liable. *Id.* Accordingly, when an insured loses ownership and possession of the vehicle, his insurable interest in it ceases with respect to liability to third persons. *Allstate Ins. Co. v. Smith,* 442 F.Supp. 89, 92 (E.D.Okl.1977).
>
> Progressive at 673 N.E.2d 524–25

Insurable interest could still exist for an entity such as Gaddis in the Gaddis matter or for Hittle in this matter as a security interest such as any lender would have on a vehicle on which it has loaned money. That fact does not change or signal ownership.

Despite this excursion into a case which is distinguishable as is the Gaddis case, the only issue here is whether Everling owned the Vehicle at the time of the Accident. Indiana substantive law is clear that possession (and the control that goes with exclusive possession) implies ownership. The Gaddis court makes no reference to any Indiana law on possession or ownership. It did not even reference any previous Court of Appeals decisions nor did it explore any other cases which had found to the contrary. This Court, in estimating what the highest court in Indiana would do, is not beholding to a case like Gaddis which is not only distinguishable but could have been incorrectly determined. Other more helpful authority is explained in the Brief including cases like O'Donnell v. American Employers Ins. Co., 622 N.E.2d 570, 573 (Ind. Ct. App. 1993) which explains that the substantive law of ownership depends on I.C.§19-13-2-121(b) that provides that the owner can include a vendee under a conditional sales agreement and I.C. §9-25 *et seq* regarding the financial responsibility statute for the operation of motor vehicles. Likewise, the Uniform Commercial Code adopted in Indiana states that the question of whether title is passed is no longer decisive in determining the ownership of goods. I.C.§26-1-2-101 The O'Donnell court found the Pontiac dealership's

9

retention of the certificate of title was for a security interest in the vehicle and actual title actually still passed to the driver.

In order to determine whether a party in possession of a vehicle is an owner or permissive user, Indiana substantive law must look to the state's financial responsibility statutes. See Great West Casualty Co. v. National Casualty Company, 385 F.3d 1094, 1094-1096, 1098 (7th Cir. 2004) (Relying on O'Donnell, the Seventh Circuit made a similar finding of ownership and permissive use) and O'Donnell, 622 N.E.2d at 574. This Court in similar matter made this exact finding:

> If a motor vehicle is the subject of an agreement for a conditional sale or lease with the right of purchase upon the performance of the condition stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, the conditional vendee or lessee is considered the owner.

American Family Mutual Ins. Co. v. Estate of Sloan, 2008 WL 511 5245, *3 (S.D. Ind. Dec. 8, 2008).

Rebuck here makes the same mistake that the non-prevailing Sloan made in Sloan. As the Sloan court stated "in an effort to distinguish the holding in Progressive Northern, defendants here challenge whether Robey had actually completed the sale of the Buick to Ashley Sloan, an issue which we agree is dispositive of the coverage issues. Defendants contend that, under Indiana law, Robey retained an insurable interest in the Buick, regardless of any conditional sale," citing the Seventh Circuit opinion in Ohio Farmers Insurance Company v. Lanta, 246 F.2d 182 (7th Cir. 1957). The Sloan court found the Lanta case not dispositive and that Indiana's adoption of the financial responsibility statutes control in Sloan. The Sloan court stated "the Seventh Circuit's more recent decision in Great West was based on current Indiana statutes relating to financial responsibility and interpretations of those statutes under case law…. These

recent cases uniformly hold, with regard to whether an automobile liability insurance policy issued to an owner of a particular vehicle remains in effect with respect to that vehicle following the transfer of ownership, that is does not."

The Sloan conclusion is particularly telling:

> Indiana law declares that the transfer of ownership of a vehicle, for financial responsibility purposes, occurs when two parties have reached an agreement on a conditional sale and possession of the vehicle is delivered….In late August or early September of 2006, Jeffrey Robey transferred possession of the Buick to Ashley Sloan, agreeing to sell the vehicle to her for the price of $1,800 to be paid over time. Robey's testimony to that effect constitutes admissible evidence that Ashley Sloan owned the vehicle from that point forward and the liability coverage issued to Robey by American Family terminated upon transfer of the car to Ms. Sloan. Id at *5

In Sloan American Family was granted summary judgment against the defendants. For the same reasons, Motorists should be granted summary judgment here.

**B.** **Because Indiana law recognizes Everling as the owner of the Vehicle, Hittle had no authority to give permission for Everling to drive the vehicle that it did not own and thus no permission was given.**

In order to give permission for the operation of the Vehicle for Everling to be considered as a permissive user under the Policy, an entity must have a position or relationship with the Vehicle for which such authority can be given. While Hittle initially allowed Everling to borrow the Vehicle, Hittle at that time owned the Vehicle. Once Everling agreed to purchase the Vehicle for $900 and that payment would be done under payroll deduction and took complete and free possession of the Vehicle (including Hittle's removal of any notations on the vehicle that it belonged to Hittle and the GPS system days before the Accident), Everling owned the Vehicle. Everling owned the Vehicle at the time of the Accident and Hittle could not have given permission and thus Everling could not have been defined as a permissive user under the Policy.

For this argument regarding permissive use, Rebuck again relies on <u>Gaddis</u>, where the court did not even interpret the same language. Nowhere in the cited language in the <u>Gaddis</u> opinion is any evaluation of the exception to the permissive use definition of an insured, specifically that an individual does not qualify as an insured if the liability arises from a vehicle owned by an employee.

Lastly, Rebuck attempts to distinguish the <u>Protective</u> case. The footnote to that case which states that the record indicates a factual dispute concerning ownership of the vehicle at issue there states that the Court could not address that issue because no factual issues in dispute were presented on appeal and stated merely that the issue <u>could</u> (not should) preclude a summary judgment. Such a remark therefore is dicta in the <u>Progressive</u> case and cannot be used as a precedent to indicate <u>any</u> time parties disagree as to ownership would preclude summary judgment, which would be contrary to <u>Anderson</u>. In addition the second footnote indicates that Progressive did not develop any argument on the theory that the vehicle operator Simpson was a permissive user of the vehicle. While the <u>Progressive</u> case did not so, clearly the <u>O'Donnell</u> case as referenced above did (someone does not have the authority to give permission for a vehicle that it did not own.)

Glaringly, Rebuck does not even try to distinguish the other cases upon which Indian substantive law on ownership depends cited in the Brief. He does not attempt to evaluate Indiana statute, the real basis of determining ownership of a vehicle and merely cites to one case that either the Court of Appeals did not have all of the appropriate information or may have been incorrectly decided.

12

## IV. CONCLUSION

Motorists is entitled to summary judgment as a matter of law. There are no genuine issues of material fact in this case. The fact that Everling may believe that he did not have an agreement does not mean that an agreement did not exist under Indiana law. As such, the so-called disputed issues as to Everling's feelings about ownership are not genuine and are not material. It is undisputed that Everling agreed to pay $900 for the Vehicle and that Everling agreed that payroll deduction would be the mode of payment. While Everling ignored written documentation (which he later actually verified by signing a purchase contract) of the exact amounts and timing of the payments, he took possession of the Vehicle prior to the Accident and had sole authority and freedom to use it in any way he chose. As such, the conditional agreement made by Everling is sufficient to trigger ownership under Indiana law for Everling at the time of the Accident. As such the Policy does not extend coverage to Everling because he does not qualify as an insured under the Policy.

Respectfully submitted,

By: *s/ Ginny L. Peterson*
Ginny L. Peterson, Attorney No. 20305-41
KIGHTLINGER & GRAY, LLP
One Indiana Square, Suite 300
211 N. Pennsylvania Street
Indianapolis, IN 46204
Email: gpeterson@k-glaw.com
Telephone: (317) 638-4521
Facsimile: (317) 636-5917

*Attorneys for Motorists Mutual Insurance Company*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 11th day of August, 2021, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John P. Daly, Jr.
GOLITKO & DALY, P.C.
9450 N. Meridian Street, Suite 250
Indianapolis, IN 46260
*Attorney for Jarod Rebuck*

             s/ *Ginny L. Peterson*
             Ginny L. Peterson

KIGHTLINGER & GRAY, LLP
One Indiana Square, Suite 300
211 N. Pennsylvania Street
Indianapolis, IN 46204
(317) 638-4521
gpeterson@k-glaw.com