UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:20-cv-00394-RLY-MPB |
| JAROD REBUCK, | ) ) ) | |
| Defendant. | ) | |

**ENTRY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Motorists Mutual Insurance Company filed this action against Jarod Rebuck, Wayne Everling, and Niki Everling, seeking a declaration that it owes no duty to defend or indemnify Wayne in a negligence action filed against him by Rebuck in state court (the "Underlying Lawsuit"). Motorists now moves for summary judgment against all Defendants.

First, Motorists moves for summary judgment against the Everlings on the grounds that neither of the Everlings qualify for uninsured or underinsured motorists coverage under an insurance policy issued by Motorists to Wayne's employer, Hittle Landscaping, Inc. The Everlings have failed to appear in this lawsuit, and a default judgment was entered against them on April 30, 2021, after this motion was filed. Therefore, Motorists's motion for summary judgment on the issue of the Everlings' uninsured or underinsured motorists coverage is **DENIED AS MOOT**.

1

Second, Motorists moves for summary judgment seeking a declaration that the insurance policy does not extend liability coverage to Wayne for the Underlying Lawsuit, and therefore it owes no duty to pay any judgment Rebuck obtains in the suit. That issue turns on whether, at the time of the wreck, Wayne owned the truck he was driving. Because there is a disputed question of fact with respect to the ownership of the truck under Indiana law, which applies here as both parties agree, summary judgment is **DENIED**.

I. The Facts

At all times relevant to this action, Hittle was insured by Motorists. (Filing No. 1-2, Policy). Under Hittle's policy, Motorists agreed to pay the damages incurred by an "insured." (*Id.* at 10). An "insured" is defined by the policy as: (1) Hittle, for any covered auto, and (2) "Anyone else while using with [Hittle's] permission a covered 'auto' [Hittle] own[s], hire[s] or borrow[s] except . . . [Hittle's] 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household." (*Id.*). Among the covered autos was a 1996 Chevrolet 1500, (*id.* at 4), which Hittle referred to as "Truck 56" or "TK 56." (Filing Nos. 43-1 and 60-1, Everling Dep. at 5-6).

Wayne Everling was an employee of Hittle. (*Id.* at 5). When Wayne's old vehicle broke down, he asked Hittle if he could borrow one of the company trucks. (*Id.*). Jeff Jaenichen at Hittle told Wayne that he could use Truck 56, which no one really drove. (*Id.* at 5-6). A few days later, Jaenichen informed Wayne that Hittle was selling the truck, and he asked Wayne if he would be interested in purchasing it. (*Id.* at 6). Wayne responded: "Well, I would have to talk with my wife and find out how much it would be

and, you know, all that stuff." (*Id.* at 6-7). Jaenichen quoted Wayne a price of $1,000, but the parties "got down to $900." (*Id.* at 7). After Jaenichen and Wayne discussed the price, Wayne again said, "I have to talk with my wife." (*Id.*).

A January 23, 2017 accounting record labeled "TK-56 Wayne Everling" shows a $900 loan on that date and an amortization schedule with the first payment of $76.71 due on February 23, 2017. (Filing No. 43-1, Ex. 2 at 2).[1] However, the record does not show that Wayne signed a loan agreement at that time.

Also on January 23, an internal email from Marla Wallace, a Hittle office manager, stated: "We sold TK 56 to Wayne Everling for $900." (Filing No. 43-1, Ex. 3, GPS Email). In addition, the email requested that the GPS unit be removed from the vehicle. (*Id.*). Wayne's testimony indicates that the GPS unit was removed on or around February 5, 2017. (Everling Dep. at 30 (estimating that the GPS Unit remained in the vehicle until "probably three days" before the February 8 wreck, and noting that Hittle had it removed)).

Wallace also sent an email on February 6 informing Wayne that his "payment schedule [was] completed for the purchase of TK 56." (Ex. 2 at 1). Wallace stated that the first payment would be due on February 23, 2017, (*id.*), and requested that Wayne retrieve a copy of the payment schedule from her on February 7. (*Id.* at 1). Wayne

---

[1] Exhibit 2 to Everling's Deposition is an email from Marla Wallace to Wayne Everling. (Filing No. 43-1, Ex. 2 at 1). The next page attached by Motorists is the accounting record, which is not marked as an exhibit, and the following page is marked as Exhibit 3. It is not clear whether the accounting record was attached to the Wallace email or if the exhibits were simply not separated by mistake.

intended to retrieve a copy of the payment schedule from Wallace on February 8, but he ultimately did not do so either because Wallace was not there or because he "just flat out forgot to go." (Everling Dep. at 39).

However, as of February 8, it was Wayne's understanding that the first payment for the truck would be due later that month on February 23, and it would come through payroll deduction. (*Id.* at 41). He understood that Hittle could potentially repossess the truck if he did not make the agreed upon payments, but as long as he was making the payments, he had the right to possess and use the truck. (*Id.* at 36). But, as of February 8, no written contract for the purchase of the truck had been signed by Hittle and Wayne, (*Id.* at 7; Wallace Dep. at 12), and the record does not reflect if Wayne verbally agreed to purchase the truck—or when and how he did so.[2] Wayne had not paid "a cent" for the truck, and it still displayed Hittle plates. (Everling Dep. at 8-9).

Wayne was driving the truck later that evening on February 8, 2017, when he collided with a vehicle driven by Jarod Rebuck. (*Id.* at 39; Filing No. 43-4, Pleadings in Underlying Lawsuit at 1). When Wayne returned to work after the wreck, he was told that "somebody's got to pay for the truck," which had been totaled. (Everling Dep. at 8, 60). As Wayne was the one driving it, that "somebody" was him. (*Id.* at 60). On June

---

[2] Motorists cites to page 34 of Wayne's deposition for the proposition that he verbally agreed to purchase the truck for $900, to be deducted from his payroll. That page does not discuss the purchase price or payroll deductions. (Everling Dep. at 34). It indicates, devoid of context because the surrounding pages of the deposition are not provided, that Wayne considered the purchase to be agreed when Hittle approved of the loan. (*Id.*). Without more context, and taking the record in the light most favorable to Rebuck, the court cannot say whether this refers to January 23, when the internal accounting record shows a loan of $900, or June 27, when the loan agreement was signed by Hittle and Wayne.

4

27, 2017, Wayne signed a loan agreement for $900, which was to be repaid through weekly payroll deductions of $76.71. (Filing No. 43-1, Ex. 4, Loan Agreement at 1-2). After that agreement was signed—months after the wreck—Hittle started taking out the payments. (Everling Dep. at 8).

In July 2017, Motorists instructed Hittle to hold the vehicle in its yard for insurance purposes. (Filing No. 60-2, Wallace Dep. at 13). Although the vehicle likely "went to salvage," neither Wayne nor Hittle received any salvage value for the totaled truck. (*Id.*; Everling Dep. at 9). It is unclear who, if anyone, received the salvage value for the vehicle.

Rebuck sued Wayne and Hittle in state court in Indiana, alleging that Wayne negligently operated the truck in the scope of his employment with Hittle. (Pleadings in Underlying Lawsuit at 2). Motorists then filed an action in this court against Wayne, his wife, and Rebuck, seeking a declaration that it has no duty to defend, indemnify, or pay any judgment entered against Wayne in the Underlying Lawsuit. Motorists now moves for summary judgment, opposed only by Rebuck.

**II.    Standard of Review**

"The principal function of summary judgment is to prevent unnecessary trials by screening out factually unsupported claims." *James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020) (citation omitted). The court may grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the

5

nonmoving party.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering a motion for summary judgment, the court must consider all of the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences from that evidence in favor of the party opposing summary judgment. *Feliberty v. Kemper Corp.*, 98 F.3d 274, 277 (7th Cir. 1996).

**III.   Discussion**

This key question in this case is whether Wayne had a binding agreement to purchase the truck at the time of the wreck.  If he did have an agreement to purchase the truck, then he would be considered the owner under Indiana law—despite never receiving the certificate of title to the truck. *Great W. Cas. Co. v. Nat'l Cas. Co.*, 385 F.3d 1094, 1096-97 (7th Cir. 2004), *as amended* (Oct. 22, 2004) (applying Indiana law, purchaser in possession of vehicle under a conditional sales contract was an owner rather than a permissive user, despite lack of title); *see also* Ind. Code § 9-13-2-121(a)(2) (an "owner" is a person "entitled to the use or possession of . . . a vehicle . . . through a lease or other agreement intended to operate as security").  If Hittle transferred ownership of the truck to Wayne, then it could no longer grant anyone permission to use the truck it no longer owned. *Am. Fam. Mut. Ins. Co. v. Est. of Sloan*, No. 1:07-CV-0327, 2008 WL 5115245, at * 2 (S.D. Ind. Dec. 3, 2008).  Thus, Hittle's insurance policy with Motorists would no longer cover Wayne, because the policy covers only Hittle and drivers using vehicles with its permission.  (Policy at 10).

Motorists argues that Wayne agreed to purchase the truck and was its owner; therefore, it seeks a declaration that he was not covered under Hittle's policy when he collided with Rebuck, and it owes no duty to defend or indemnify him in Rebuck's lawsuit against him. Rebuck contends it is a question of fact whether Wayne owned the truck before the wreck. The court concludes that there is an unresolved question of fact regarding whether Wayne effectively manifested assent prior to February 8. Because Motorists has not carried its burden at summary judgment to show that a contract was formed before the wreck, it has not shown that its policy no longer extended coverage to Wayne for his use of the truck.

A contract is formed when an offer is accepted. *New v. T3 Invs. Corp.*, 55 N.E.3d 870, 878 (Ind. Ct. App. 2016). Likewise, formation of a contract requires an objective manifestation of assent. *Carr v. Hoosier Photo Supplies, Inc.*, 441 N.E.2d 450, 455 (Ind. 1982) (citations omitted); *State v. Koorsen*, No. 20A-PL-2306, 2021 WL 5626362, at *6 (Ind. Ct. App. Dec. 1, 2021) ("When the objective manifestations of the parties' intent fail to show agreement on an essential term of the purported agreement, there is no mutual assent—hence, no contract."). Here, the evidence does not establish that Wayne either communicated his acceptance of Jaenichen's offer to sell the truck or made a counteroffer which Hittle accepted *before* the wreck occurred on February 8.

Wayne did not sign a written contract or pay even "a cent" for the truck by February 8. (Everling Dep. at 7, 9; Wallace Dep. at 12). At that time, Hittle had not notified Motorists that it was selling the vehicle. (Wallace Dep. at 11). As Wallace put it: "We hadn't finalized the paperwork. I was waiting on [Wayne] to come and get the

7

amortization schedule." (*Id.* at 11-12). It appears that no written contracts for the purchase of the truck were executed until the June 27 loan agreement. (Loan Agreement at 2; Everling Dep. at 8; Wallace Dep. at 12). And it was only after that agreement was signed that Hittle started taking out payments. (Everling Dep. at 8).

Some evidence suggests that a verbal agreement was reached sometime before the February 8 wreck.[3] By then, the parties had apparently settled on a price of $900; Hittle had the GPS unit removed from the truck; a payment schedule was prepared by Hittle; Wayne understood that the first payment was due on February 23 and would be deducted from his paycheck; and internal emails prior to the wreck show that Hittle considered the truck sold. Wayne also testified that "we just came to an agreement that I wanted to purchase it right before the wreck." (Everling Dep. at 7).

However, Wayne's testimony does not necessarily indicate that an agreement was finalized at that time. (*See id.* ("[W]e just came to an agreement that *I wanted to purchase it*.") (emphasis added)); *see also Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind. 1996) (an agreement to agree at some future time is not enforceable). After Jaenichen "got back" to him about the price, he said he would have to talk to his wife. (Everling Dep. at 7). And Motorists has not pointed to any evidence clearly showing that Wayne communicated his acceptance or otherwise objectively manifested his assent in any way

---

[3] The court acknowledges that a verbal agreement for the sale of a truck for $900 would ordinarily be subject to Indiana's statute of frauds. *See* Ind. Code. § 26-1-2-201; *see also O'Donnell v. Am. Emps. Ins. Co.*, 622 N.E.2d 570, 576 (Ind. Ct. App. 1993) ("The sale of a motor vehicle is a sale of goods controlled by Article Two on Sales."). However, neither party has discussed what import, if any, the statute of frauds might have here.

8

before the collision occurred on February 8. As of that time, Wayne had not signed anything, made any sort of deposit, registered the vehicle, obtained insurance on the vehicle, or acquired financing.[4]

Based on Hittle's emails and Wayne's testimony, one might infer that a verbal agreement was reached at some point prior to February 8; however, one might also conclude that Wayne was borrowing the truck and in negotiations to purchase it when the collision occurred. (*See e.g.*, Everling Dep. at 9 ("I was just borrowing [the truck] until we came to an agreement, and I signed something.")). There is evidence from which to infer that Wayne and Hittle were nearing an agreement, but Wayne had not yet effectively manifested his intent to be bound. *See Block v. Magura*, 949 N.E.2d 1261, 1267 (Ind. Ct. App. 2011) (requiring objective manifestation of intent to be bound). Where Motorists has the burden of proof and has failed to fill significant holes in the record, the court cannot say that no reasonable juror could reach that conclusion.

Thus, there is a question of fact regarding whether the contract was formed at the time of the wreck. *Contra Great W. Cas. Co.*, 385 F.3d at 1096 n.2 ("In both the present case and *O'Donnell*, the parties had executed a contract, were making payment and there

---

[4] In a case with closely analogous facts, the Indiana Court of Appeals found a question of fact as to ownership of a vehicle where title was not transferred; no payment was made; the purchaser had previously driven cars owned by the seller in the purchaser's employment; and the purchaser had neither registered the car nor purchased insurance at the time of the accident. *Auto-Owners Ins. Co. v. Bill Gaddis Chrysler Dodge, Inc.*, 973 N.E.2d 1179, 1184 (Ind. Ct. App. 2012). Moreover, the fact that the car was sold at auction after the accident and the purchaser did not receive the proceeds, without more, supported the reasonable inference that the seller owned the car at the time of the accident. *Id.* Similarly, Hittle retained the totaled truck at its facility after the wreck, and it likely "went to salvage." (Wallace Dep. at 13). But Wayne never received any salvage value for the truck. (Everling Dep. at 9). It is not clear who received the salvage value.

9

were no other conditions precedent to be met."); *O'Donnell*, 622 N.E.2d at 574 (purchasers were the owners where "there was nothing left to be done to transfer ownership of the car . . . except for placing title in their name") (internal quotation marks and citation omitted). Accordingly, there remains a question of fact: whether Wayne owned the truck. *See* Ind. Code § 9-13-2-121(a)(2) (requiring a "lease or other agreement intended to operate as security" for a person lacking title to be an "owner" of a vehicle); *see also Gaddis*, 973 N.E.2d at 1184 (summary judgment was precluded in insurance coverage case where evidence supported the reasonable inference that the purchaser of a vehicle had not yet become the owner).

As it is uncontroverted that Wayne was borrowing the truck when negotiations to purchase it began, (Filing No 61, Pl.'s Reply at 4),[5] a jury could find that Wayne was using the truck with Hittle's permission and was still an "insured" under Hittle's insurance policy with Motorists. (Policy at 10). Therefore, Motorists's motion for summary judgment must be denied.

## IV. Conclusion

Because a reasonable jury could conclude that no contract for the sale of the truck was formed before the wreck, a question of fact remains which precludes summary judgment. Motorists's motion for summary judgment (Filing No. 41), seeking a declaration that it owes no duty under the policy to defend or indemnify Wayne in

---

[5] It appears Motorists does not contest Rebuck's assertion that Wayne asked Jaenichen to borrow the truck and Jaenichen permitted him to do so. The record supports this version of events. (Everling Dep. at 6).

Rebuck's lawsuit against him, is **DENIED**.  The portion of the motion pertaining only to Wayne and Niki Everling is **DENIED AS MOOT**, because default judgment was granted against the Everlings on April 30, 2021.

**IT IS SO ORDERED** this 19th  day of January, 2022.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Counsel of Record.